UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ANDREW P. BODNAR**, | ) | Case No. 5:05 CV 1689 |
| | ) | |
| Petitioner, | ) | Judge James S. Gwin |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |
| | ) | |

Andrew P. Bodnar is a prisoner in federal custody following the seven count superseding information for crimes of conspiring to commit securities fraud, mail fraud, and income tax evasion. On August 27, 2001 he negotiated a plea agreement with the government which contained the recommendation to the court to sentence based on a U.S.S.G. offense level of 35 with a three level reduction for acceptance of responsibility and allowing the government discretion to move for up to a three level reduction for providing substantial assistance to the government. Bodnar pleaded guilty to all charges and the government followed through with its contractual commitments resulting in a U.S.S.G. offense level of 31 and a sentencing range of 108 to 135 months. Bodnar was sentenced by the court to 135 months and no appeal was taken.

On June 16, 2005 Bodnar sent a motion to vacate, set aside or correct sentence under 28 U.S.C. §2255 for the Clerk of Courts for filing (See Petition at 13). He raises what he has denominated as four grounds, but they contain a web of connected arguments. His primary contention is that his August 2001 sentence stands in violation of *U.S. v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *Booker* held that the mandatory sentencing guideline system

violated the Sixth Amendment and ordered remedial measures to sever the provision of 18 U.S.C. §3553(b)(1) that rendered the guidelines mandatory so the guidelines became effectively "advisory" and that statute as modified by *Booker* "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing, including 'to reflect the seriousness of the offense,' 'to promote respect for the law,' 'to provide just punishment for the offense,' 'to afford adequate deference to criminal conduct,' and 'to protect the public from further crimes of the defendant.'" *Kimbrough v. U.S.*, - U.S. -, 128 S.Ct. 558, 570 (2007); and see 18 U.S.C. §3553(a).  Related to this, he claims ineffective assistance of counsel in the plea bargaining process referencing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed. 2d 203 (1985).  Bodnar's Exhibit A is an Akron Beacon Journal article concerning co-conspirator William Thomas, Jr. who was sentenced in U.S. District Court to six years and eight months.  Apparently Bodnar seeks to use his co-conspirator as a comparator to demonstrate that his sentence exceeded the maximum authorized by the facts that would be found by a jury alone in violation of *Booker*.  Under what is denominated as Ground No. 3 he contends there was a breach of a plea agreement because he was not rewarded with a three point reduction of his sentence for cooperation and under his fourth ground he absurdly contends that he did not obtain the one point reduction for cooperation as alleged by the government rendering him "actually innocent" of the sentence imposed in violation of his Fifth Amendment right to due process of law.

*Timeliness:*

The government seeks dismissal as the §2255 motion is untimely.  Timeliness is gauged under a "1-year period of limitation" which runs from the latest of:

5:05 CV 1689                                                    3

> (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court; if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(28 U.S.C. §2255 ¶6).

Bodnar's conviction had become final on September 7, 2001, 10 days following judgment with the expiration of time for seeking appellate review. See Fed. R. App. P. 4(b)(1).

Bodnar believes the Supreme Court's holding in *U.S. v. Booker* triggers paragraph 6(3) of §2255. He argues that since *Booker* was decided on January 12, 2005 and since he filed his §2255 motion on June 16, 2005 his motion is timely. Bodnar places special emphasis on *U.S. v. Siegelbaum*, 359 F.Supp.2d 1104 (D. Ore. 2005) and *Dodd v. U.S.*, 545 U.S. 353, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005). As *Dodd* states, "the applicant has one year from the date on which the right he asserts was initially recognized by the Court." *Id.*, 545 U.S. at 357, 125 S.Ct. at 2482.

Bodnar's reasoning, though, is erroneous. The critical portion of §2255 ¶6 (3), requires that the right must be, "made retroactively applicable to cases on collateral review." Circuit precedent is now absolutely clear that the principles addressed in *Booker* are procedural rules which do not

5:05 CV 1689                                             4

have retroactive effect in collateral review of convictions which became final after the decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), but prior to *Booker*. See *Valentine v. U.S.*, 488 F.3d.325, 328-31(6th Cir. 2007). Prior to the decision in *Valentine*, the Sixth Circuit had made a similar finding on the lack of retroactive application of *Apprendi*-based principles on collateral review where the conviction had become "final" on direct appeal before the Supreme Court issued this decision. See *Humphress v. U.S.*, 398 F.3d 855 (6th Cir. 2005), *cert. denied*, - U.S. -, 126 S.Ct. 199, 163 L.Ed.2d 190 (2005). The decision in *Humphress* was challenged in *Valentine* in an effort to distinguish it in situations, as in this case, where the conviction had become final after *Apprendi* had been decided, but prior to *Booker*. Although the decision in *Valentine* acknowledged that *Humphress* did "not strictly control" in this situation, *Booker* nonetheless did not apply retroactively on collateral review in cases where convictions had become final following *Apprendi*. See *Valentine, supra* at 328-31.

Neither, *Apprendi* nor the decision that followed in *Blakely v. Washington* contained any opinion on the Federal Sentencing Guidelines. See *Blakely,* 542 U.S. 296, 305 n. 9, 124 S.Ct. 2531, 2538 n. 9, 159 L.Ed.2d 403 (2004) ("The Federal Guidelines are not before us and we express no opinion on them."); *Apprendi*, 530 U.S. at 497 n. 21, 120 S.Ct. at 2366 n. 21 (same). In those several published decisions from circuit courts which address the application of the *Blakely's* retroactively separately, they have found that *Blakely* has no retroactive application on collateral review of convictions which have become final before it. See *Schardt v. Payne*, 414 F.3d 1035, 1036 (9th Cir. 2005); *U.S. v. Price*, 400 F.3d 844, 845-49 (10th Cir. 2005); *Varela v. U.S.*, 400 F.3d 864, 867 (11th Cir. 2005). (This in addition to those cases which found no retroactivity for purposes of a second or

5:05 CV 1689                                            5

successive collateral review petition, e.g. *In re Dean*, 375 F.3d 1287 (11th Cir. 2004)). *Booker's* finding of inadequate Sixth Amendment protection under the federal sentencing guidelines represents a new rule which is procedural rather than substantive and further does not fit into any of the exceptions to allow retroactive application of new procedural rules. See *Valentine*, *supra*. Falling back on the general rule from *Schriro v. Summerlin*, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 441 (2004), new requirements developing under the Sixth Amendment do not apply retroactively to cases on collateral review. *Schriro*, 542 U.S. at 357-58, 124 S.Ct. at 2526-27, *Varela*, 400 F.3d at 867.

Bodnar complains that *Siegelbaum* held that *Booker* was retroactive application on habeas corpus review. This is incorrect. In *Siegelbaum*, "the court was wrestling with the retroactive effect of *Booker* and *Blakely* on the defendant's sentence prior to either case . . . but ultimately determined that 'existing precedent [did] not definitively answer whether the rule announced in *Blakely/Booker* applies retroactively[.]" *U.S. v. Fisher*, 421 F.Supp.2d 785, 791 n. 1 (D. Del. 2006); and see *Siegelbaum*, 359 F.Supp.2d at 1108. Unlike the legal landscape confronted in *Siegelbaum*, there is strong precedent contrary to Bodnar's arguments in this circuit. As a result his §2255 motion is untimely and should be dismissed.

*Lack of Merit:*

Bodnar contends he received ineffective assistance of counsel in the plea negotiation process. Current federal practice recognizes three basic types of plea agreements under Fed. R. Crim. P. 11(c)(1). Under Rule 11(c)(1)(A), hence its common name of A-type, the government essentially will not bring additional charges and will move to dismiss other charges. Under the B-type, the

5:05 CV 1689                                              6

government will recommend or agree not to oppose defendant's request for a particular sentence. The recommendation is treated as a mere request and not binding on the court. See Rule 11(c)(1)(B). Finally, under the C-type, the parties have made a plea contingent on a specific sentence which the court must either accept or reject. See Rule 11(c)(1)(C). Plea bargaining has by the federal rule been brought into the open and has been to some extent "regularized" by the adoption of these procedures. See Advisory Committee Notes to 1975 amendment of Rule 11; 1A Wright *Federal Practice & Procedure: Criminal 3d*, §175.1 pg. 243 (1999).

Bodnar had negotiated a B-type agreement with the understanding that the U.S.S.G. offense level was 35 with an expectation expressed by Bodnar's counsel to a 3-level reduction for acceptance of responsibility to produce a sentence calculated under an adjusted offense level of 32. (Plea and Sentence Hearing TR. 19). The U.S. Attorney had discretion to move for an additional reduction of up to 3 levels for cooperation, but at the time of sentencing it was the view that only "some assistance" had been provided by Bodnar.(*Id.*, TR. 30). The U.S. Attorney requested only a 1-level reduction for cooperation, which was granted by the Court. (*Id.*). The result was a sentencing range of 108 to 135 months at an offense level of 31. Had two more points been requested and granted, the sentencing range would have been 87 to 108 months, or 7 ¼ to 9 years.

Bodnar argues that he was informed by counsel that if he pleaded guilty he would receive a sentence in the range of 7 to 9 years. "'[A] plea of guilty entered by one fully aware of the direct consequences, . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by

5:05 CV 1689                                            7

promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'" *Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984), quoting *Brady v. U.S.*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970). The record shows that Bodnar was aware of the consequences. Moreover, in the context of guilty pleas, in order to satisfy Sixth Amendment claim of ineffective assistance of counsel, Bodnar must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty, and would have insisted on going to trial. See *Hill v. Lockhart*, 474 U.S. 52, 59. 106 S.Ct. 366, 88 L.Ed. 2d 203 (1985). Under the clear and unmistakable terms of the written plea agreement, Bodnar fails to show that he was misled by defense counsel. "There is a critical difference between entitlement and a mere hope or expectation that the trial court will follow the prosecutor's recommendation." *Mabry v. Johnson*, 467 U.S. 504, 507 n.5, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

Bodnar next claims that the government failed to honor the plea agreement, which does state a cognizable violation of due process. See *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). However, the record as evidenced by the Plea and Sentencing transcripts specifically contradicts this claim. The plea agreement at paragraph 3 specifically set out provision for up to a 3-level departure under U.S.S.G. §5K1.1 and the record shows that the government did move for a one level departure and this motion was granted by the court. (Plea and Sentencing Hearing TR. at 30). Furthermore, the judgment entry correctly reflects the one point reduction for cooperation (Plea and Sentencing Hearing TR. at 50). Accordingly, there is no merit to Bodnar's claims that the facts were otherwise.

5:05 CV 1689                                              8

Bodnar argues in his reply that the U.S. did breach the plea agreement because Bodnar continued to aid the government after he was sentenced, did not self-report but agreed to spend six months in prison to aid the government so the government would not be concerned how it would look if he were to walk out on the street after he had just pled. This challenge though has nothing to do with the constitutionality of his sentence and it is interesting to note that Bodnar continued this cooperation after knowing he receiving only a 1-level reduction for his cooperation. Thus, his complaint is based on his own voluntary action and not any claim of deception by counsel, government or court.

### *CONCLUSION AND RECOMMENDATION*

It is recommended that the pending motion to vacate, set aside or correct sentence under 28 U.S. C. § 2255 be dismissed as untimely or alternatively for lack of merit. Since the motion is meritless it is unnecessary to consider equitable tolling or evidentiary hearing. Further, it is recommended that the court certify pursuant to 28 U.S.C. §1915(a)(3) that an appeal form this decision could not be taken in good faith and that there is no basis on which to issue a certificate of appealability. See 28 U.S.C. §2253(c); Fed. R. App P. 22(b).

                                                          s/James S. Gallas                
                                                      United States Magistrate Judge

5:05 CV 1689                                              9

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).


Dated: **January 4, 2008**